2013, 7-0-6-1. Ms. Kadlec will be ready when you are. Good morning. This is a case where the veteran had lost his hearing over the course of time after having served during the Vietnam era from 1966 to 1968. Apparently while he was in the military he was diagnosed with tinnitus but it was never service, could never prove a service connection for the hearing loss. Apparently in 2005 or 2004 Congress asked for an assessment of military members who had served from the Second World War to 2005 and they wanted to know about tinnitus and hearing loss. Ms. Kadlec, you've recited the history of his proceedings in the VA but aren't you basically appealing the decision involving an application of the law to the facts with which we have no jurisdiction? We have no jurisdiction to determine facts or determine the correctness of the application of law to fact by the prior tribunals. Well, Your Honor, we have submitted some documents pursuant to the Federal Rules of Evidence 201 for the court to take judicial review. I understand that the jurisdiction of the court is set by Title 38 U.S.C. 7292 but Judge Castle did take partial judicial notice of a document. He noted that the document was ordered by Congress or contracted. It was perhaps what was going on. Is that the determination of fact or application of law to fact? Is it a better understanding of it? We were trying to ask the court to look at these documents to determine whether or not the underlying definition of acoustic trauma, I mean of high central hearing loss was actually the proper definition for acoustic trauma to the ear. We had found a memorandum that was written by Undersecretary Kisser in 1995 that actually gave us the definition of hearing loss or tinnitus, which was considered an organic disease of the nervous system. This other document, Noise and Military Service, I believe it's on page 29 and 68, contained another definition of acoustic trauma as an injury to the ear. So we were asking the court to look at this broad spectrum. So these were evidentiary rulings made by the Court of Veterans Claims and what is the theory upon which you're appealing those rulings? Well actually they never received them because what happened was I live on Long Island and my office was knocked out by Hurricane Sandy. I was asked by the clerk after oral argument to submit two documents in the form of motions. And what happened was I couldn't file them because of inaccessibility of the clerk's office because I didn't have electricity to file the documents. And you've raised challenges now to whether or not the clerk's office should have been open. Those are other issues that you've raised here and those two raise the problem of whether or not we have jurisdiction to review either the CAB's procedural rules or their application to the particular circumstances in this case. Do you appreciate or understand why we're struggling here in terms of what issue is really presented here for us to decide and whether or not that's within the scope of our authority under the statute? Yes I do, but I was trying to enlarge the court's acceptance of taking judicial notice under Federal Veterans 201. I thought at least they could look at the documents without having to just acknowledge that the secretary received the documents. They had looked at constructive possession of the documents under the Bell series, but the original Bell v. Jawinski indicated that it was the medical knowledge of the secretary of the Department of Veterans Affairs. They used the word medical knowledge rather than constructive knowledge of the documents that had been missing. So I was trying to use that theory, Your Honor. I understand, but I was trying to at least give a veteran an opportunity to bring other information to the court's attention, even though recognizing that the record before the agency severely limits it because, number one, they don't have an attorney. Number two, I don't think you can expect a veteran to be able to call information. This particular document was prepared by the Institute of Medicine. It was published by the National Academies of Science. On the one hand, the other document, the memorandum we found in the library of the Department of Veterans Affairs, this particular veteran lives in the state of Washington. So I think it's unreasonable for anyone to expect a veteran to find these sorts of documents to submit as part of his, you know, when his claim file is in the regional office. Well, as you hear, we're stuck with our jurisdictional, statutory jurisdictional limits rather than being able to say what should have happened below and what was reasonable and what was not reasonable. And we can't apply a lot of facts, and while we respect your attempt to do the best you can for your client, who may be entirely worthy, we have to examine our own jurisdiction. I see. If the Frame of Information Act request that we filed with the Department of Veterans Affairs took eight months and 24 days to be responded to, and that was beyond the time limit for filing the last reply, would that also mean that no further information could ever be submitted or anything could be brought to the court's attention in such a case, if we had been able to call it into the actual brief? Well, the question is who has the authority to decide whether, on the question you're asking, whether the claims, I presume, is the court of first instance and they can adjudicate. It's not like your claim or your argument or your theory cannot be heard, right? I understand. I understand. I understand the limitations of the U.S. Court of Appeals for Veterans Claims. I also understand your limitations as far as facts, though actually the only court who can actually review facts, if they so choose on a very rare basis, is the United States. You say you understand our limitations. The first 30 pages of your brief were directed to the unfortunate consequences of the storm and the closure of the courts in New York and, of course, we don't have authority to decide they should have extended days. We don't have that authority. Oh, no, Your Honor. That's not exactly what I wanted to draw, of course, attention. You see, the Court of Veterans Appeals… You even cited a page from the Second Circuit's extension of time, which, of course, only extends to its court, not its subordinate district courts over which they have some actual supervisory jurisdiction. We don't have supervisory jurisdiction over the closing and the opening of the court. Oh, well, no, Your Honor. It wasn't actually closing or opening. It was more an acknowledgment of the fact that there may be limitations in other districts and other circuits that perhaps the court should be aware of. I was only putting, juxtaposing those two different sets of orders so that, let's say, since the U.S. Court of Appeals for Veterans Claims is a court of national jurisdiction, it's their first rule, so perhaps they could have been more sensitive or more understanding of the people who live, let's say, in New Jersey, Long Island, New York City, where the courts are underwater. In your case, Your Honor, I would submit the same thing because you hear, as I understand it, cases from the United States Bankruptcy Courts, which are in New York City. The United States Court of, I think, International Trade is in New York City. The Federal Court for, I think, International Claims is also in New York City on Long Island. So if you could be aware of our power grid, when we do not have power, perhaps you all could consider doing things like that in the future. I submit that respectfully. Thank you for your comment. Pardon? Thank you for your comment. Oh, you're quite welcome. Anything further, or do you want to save the rest of your time for rebuttal? I'll save the rest of my time. Thank you. Ms. Kreschner. May it please the Court. We respectively request that this appeal be dismissed for lack of jurisdiction. All of the issues that are being brought to the Court's attention involve the situation that the veteran was faced with, is that the Veterans Court's record by statute, 38 U.S.C. 7252B, the Veterans Court's review of a Board decision is limited to the record of the proceedings before the Secretary and the Board. So what the veteran was trying to do before the Veterans Court was to add various documents to the record through various notions of judicial notice or constructive possession, and to augment the record before the Veterans Court. So what's involved here is the application of law to fact. That's all that was going on in the Veterans Court, and that's all that is being raised here to the Court, and as the Court recognizes, it's outside of the Court's jurisdiction. And that includes the constructive notice of these documents? The argument, yes it does. The argument with regard to constructive notice is an application of precedent. There's no specific regulation at issue. It's precedent of the Veterans Court. So it's the application of that precedent to two particular documents. The two documents being the two reports that are discussed in the Veterans Court's decision. The first one being noise and military service, and the second one being tinnitus. Those are the only two documents where the argument was made that they come within the constructive possession doctrine. And the decision of the Veterans Court applying its doctrine to the facts of the case was simply that these are not the type of documents that one would reasonably be expected to be included in the record before the Board. Therefore, they do not come within that doctrine. These are general documents. They don't have any connection to the Veteran. So what the Veterans Court did is apply its doctrine to the facts of the case, and that's exactly what's being argued here. That was somehow erroneous, but it's still a question of the application of doctrine of Veterans Court precedent to the facts of the case. So it's beyond the Court's jurisdiction. That's also true of the judicial notice doctrine and the decision they applied the judicial notice doctrine to those same two documents. I'm not sure whether the Court wants to hear anything further from me on this. I don't have any specific questions. If there's no further argument you wish to make. I think that everything is addressed in the brief. The other question is a question of timeliness, but even that question is an application of law to the facts of the case. Thank you, Ms. Kirshner. Ms. Kedleck, do you have any reply to make? Pardon? Do you have any response to what the government has said? Yes, I do. Your Honor, my reading of the Bell v. Jawinski case is basically a reconstitution of a VA claims file where papers are missing. I mean, if you look at basically all the cases, there are documents missing and they're trying to reconstitute it. Either they're trying to find the documents or find some way to reintroduce them into a file where they were missing. That's my understanding. Because they always speak of the test is to determine whether or not the document is VA-generated. I would submit that a VA-generated document is one that is authored by a VA employee, executed or signed by a VA employee, and filed within a claim file or a Department of VA depository. I mean, that's my understanding of the Bell doctrines, per se, for all of them. In this case, we were trying to introduce the use of the Federal Rules of Evidence 201 judicial notice for the first time, expanding it. So far, the Court has used it for defining like chronic duodenal ulcers, finding zip codes when they were mistyped on letters. We were trying to do something different. I understand what you're saying, but I also understand that the judges now, I don't know if it's true for the U.S. Court of Appeals for Veterans Claims, but for the federal judges, both district and appellate, there is a reference manual for scientific evidence that was produced by the judicial center that they could use to refer to whether or not this information was accurate. So, I mean, that's part of the connection between Mr. Monsingo and these books. Apparently, the Department of Justice very kindly submitted several documents within their joint appendix, which were culled from the record before the agency. These were forms from the Department of Defense's induction and separation documents. Well, apparently, in the National Academies of Science book on page 147, there's a list of the documents that this committee actually studied. And if you compare that list, you'll find that Mr. Monsingo's information was formed on one of those lists. And since he had the diagnosis of tinnitus and hearing loss, he would have been in that part of the study group that was before the Court. So that's why we wanted these documents in there, because if I can show that Mr. Monsingo had tinnitus, hearing loss, the forms were submitted by the Department of Justice, they're in the confidential joint appendix, and that those documents were studied by the subcommittee or the committee on hearing loss, then all of a sudden we can open up the question of service connection that way, even if it's not in his file, because he would have been part of that study group. I respectfully submit that, sir. Thank you, Ms. Kadlec. We appreciate your zealous representation of your client, and we'll take the case under advisement. Thank you very much.